Wills et al., Appellees, *v.* Frank Hoover Supply et al., Appellants.

[Cite as Wills *v.* Frank Hoover Supply (1986), 26 Ohio St. 3d 186.]

(No. 85-1872—Decided August 25, 1986.)

*Burman, Robinson & McCarthy Co., L.P.A.,* Dennis M. McCarthy, *William C. Becker, Morrison, Myer & Bindley* and *Peter J. Myer,* for appellees.

*Morrow, Gordon & Byrd* and *L. James Gordon,* for appellants.

*Per Curiam.* The sole issue before this court is whether the trial court erred in granting the appellants' motions for summary judgment. For the reasons set forth below, the decision of the court of appeals is reversed as to appellant Bowerston, and affirmed as to appellant Hoover.

It is axiomatic that a motion for summary judgment shall only be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment shall not be granted unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. In reviewing a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party. Civ. R. 56(C); *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466].

Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party. As such, whether the granting of summary judgment was appropriate in this case depends upon whether any disputed issues of fact exist regarding what duty of care was owed to appellees by appellants. As noted above, appellant Hoover is the owner of the oil well equipment which caused appellees' injuries. On the other hand, appellant Bowerston is the lessor of the land upon which Brent was injured. Determination of appellants' liability, if any, is predicated on different rules in light of their differing relationships to appellees. Accordingly, we review the propriety of the granting of their summary judgment motions separately.

## I

Appellant Bowerston contends that the trial court properly granted its motion for summary judgment because Bowerston is an owner out of possession or control of the premises where the injuries to Brent occurred. As such, this appellant asserts it is not liable as a matter of law. Appellees dispute this claim arguing that Bowerston continued to exercise control over the land leased to Hoover in that Bowerston granted permission to others to cut wood on the property.

This court has stated that the test to be applied in every case involving the liability of a property owner for injuries arising from the defective condition of premises under lease to another is whether the landowner was in possession or control of the premises, or the part thereof, the disrepair of which caused the injury. *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611, 612 [1 O.O. 269]. The lessor is not liable for injuries to a third party in the absence of authority to exercise control over the premises to the exclusion of any control by the lessee. *Ripple* v. *Mahoning Natl. Bank* (1944), 143 Ohio St. 614 [28 O.O. 508]. The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power. *Cooper* v. *Roose* (1949), 151 Ohio St. 316 [39 O.O. 145]; *Brown* v. *Cleveland Baseball Co.* (1952), 158 Ohio St. 1 [47 O.O. 478]. In the instant case, appellees attribute their injuries to an operating oil well pump owned by Hoover, but located on Bowerston's land pursuant to an

oil and gas lease. The well and the well site were exclusively controlled by Hoover, and the record in this case is totally devoid of any facts to the contrary. The fact that Bowerston may have given others permission to cut wood from the land does not alter this reality. The pump existed in an area cleared of trees. Even if Bowerston gave its permission to cut trees on other parts of the land, there is no indication that such activity would place such invitees on the pump site. In the absence of either occupation or control of the pump site itself, to wit: the part of the premises the disrepair of which caused the injury, Bowerston owed no duty to persons entering this area and the trial court was correct in granting summary judgment as to this appellant. Accordingly, we reverse the decision of the court of appeals and enter final judgment for appellant Bowerston Shale Company.

## II

With regard to appellant Hoover, appellees contend that the facts submitted to the trial court under the summary judgment procedure were sufficient, if believed, to warrant presentation of the case to the jury under authority of *Coy* v. *Columbus, Delaware & Marion Electric Co.* (1932), 125 Ohio St. 283. In *Coy,* a six-year-old plaintiff was injured by electric shock from a high voltage transformer owned by the defendant electric company. The transformer was located on vacant premises bounded on one side by a pathway used by pedestrians generally and by children continuously as a playground. Knowing that children and adults were in close proximity to the transformer, the defendant erected a protective picket fence. However, over a period of time, the defendant allowed the fence to deteriorate and become loose enough to form large openings. The plaintiff was injured when he and his brother climbed through the fence and the plaintiff came into contact with the transformer. Despite the fact that the plaintiff was trespassing at the time the injury occurred, this court ruled that the plaintiff's petition presented a legally cognizable cause of action by alleging the negligent operation of a highly dangerous piece of equipment on premises where the defendant, for several years, allowed a protective fence to deteriorate despite full knowledge of the continuous presence of children. In *Coy,* the sufficiency of the plaintiff's petition was analyzed in light of this court's rulings in two earlier cases. In *Railroad Co.* v. *Harvey* (1907), 77 Ohio St. 235, this court held in the first paragraph of the syllabus that:

"It is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance."

However, in *Ziehm* v. *Vale* (1918), 98 Ohio St. 306, the applicability of the *Harvey* doctrine of non-liability was distinguished in the second paragraph of the syllabus, which stated that:

"The principle of non-liability applied in the *Harvey* case, *supra,* does

not apply where the statical condition of the premises is made perilous by the active and negligent operation thereof by the owner."

Applying those principles, this court in *Coy* at 289 concluded:

"The instant petition alleged the maintenance of an electrical transformer in active operation containing a powerful and dangerous electric current, situated upon premises frequented by children, together with the allegation that the company knew that children often congregated upon such premises. Therefore, within the doctrine of the *Ziehm case,* both knowledge of the probable presence of the infant and the employment of the active force which caused the injury were alleged. *As set forth in the petition, this is not a case of a mere visible dangerous statical condition of the premises. This is an alleged case of negligent operation of a highly powerful and dangerous unit of electrical machinery upon premises where, with knowledge of the continuous presence of minors, for several years the company operating the electrical unit had permitted the fence protecting the machinery to become rotten and out of repair.*" (Emphasis added.)

Accordingly, and based upon this reasoning, this court held in the first paragraph of the syllabus of *Coy*:

"Where the statical condition of premises is made perilous by the active and negligent operation of *apparatus* thereon by the person owning or controlling the same, a liability arises for injury resulting therefrom." (Emphasis added.)

As noted by the court of appeals in this case, appellees claim that the evidentiary materials submitted below were sufficient to justify a conclusion on the part of a reasonable fact-finder that appellant Hoover knew young children were regularly on the property and that they would not be mature enough to appreciate the dangers inherent to the pumping equipment. As such, appellees claim that even if Brent were a trespasser,[1] appellant had a duty to fence or otherwise enclose the premises because of the existence of hazardous machinery. At a minimum, appellees claim that appellant had a duty to warn of the equipment's presence.

We find appellees' argument persuasive, notwithstanding appellant's assertion that this court's decision in *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, is controlling. In *Nagy, supra,* as in the other cases cited as support by

---

[1] Appellees claim that a factual dispute exists with regard to their status at the time of the accident. Appellees contend alternatively that they were licensees by virtue of appellant's acquiescence in their presence on the property, see *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176; or frequenters as defined by R.C. 4101.01(E); or recreational users as defined by R.C. 1533.18(B). We join the lower courts in rejecting appellees' claim that they were recreational users of the property. We also reject appellees' claim that R.C. 4101.01(E) defines the nature of their presence, as this "frequenter" statute is applicable only to workmen, invitees or business visitors and not to gratuitous licensees or others on the premises of another solely for purposes of their own. However, we do agree with appellees that the evidence presented below does raise issues of fact regarding whether Hoover acquiesced in Brent's presence thereby making him a licensee, or whether the children's visits were merely instances of trespassing.

the appellant, the linchpin was foreseeability. While declining to adopt the doctrine of attractive nuisance (which is not necessary in deciding this case), this court stated at 61:

"We thus decline appellant's invitation to adopt the attractive nuisance doctrine and conclude that summary judgment was proper. We hold that the attractive nuisance doctrine will not extend tort liability to the owner of a home swimming pool where the presence of a child who was injured or drowned therein was *not foreseeable by the property owner.*" (Emphasis added.)

Similarly in *Soles* v. *Ohio Edison Co.* (1945), 144 Ohio St. 373 [29 O.O. 559], this court, commenting on *Coy* and *Ziehm,* stated at 378-379:

"It is significant that in each of these cases the defendant had *knowledge of the fact that children were playing in close proximity to the instrumentality which caused the injury.*" (Emphasis added.)

In rendering final judgment for the defendant in *Soles,* we stated at 379:

"Here *we are not dealing with a child* but with a young man almost nineteen years of age, * * * *and here there is no evidence that the defendant had any knowledge that* part of the fence forming one wall of the enclosure was down, or that *any one* [sic], either child or adult, *ever went within the enclosure.*"[2] (Emphasis added.)

Because the record in this case does include evidence which, if believed, could establish that the injuries to appellees were or should have been within the contemplation of appellant Hoover, we find that the granting of summary judgment below to this appellant was improper.

Accordingly, with regard to appellant Hoover, we affirm the decision of the court of appeals and remand the case of this appellant to the trial court for further proceedings consistent with this opinion.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., concurs separately.

LOCHER and HOLMES, JJ., concur in part and dissent in part.

---

[2] See, also, *Railroad Co.* v. *Harvey, supra,* at paragraph three of the syllabus: "A water works company is not liable for the death * * * of an infant who comes upon its land without invitation * * * while playing about it *without the knowledge of the company*" (emphasis added); *Brooks* v. *Norfolk & Western Ry. Co.* (1976), 45 Ohio St. 2d 34 [74 O.O.2d 53]: "* * * [T]here is no evidence in the record, direct or inferential, * * * which indicates that Norfolk & Western *knew* that the operation of its freight train * * * on its right-of-way * * * would, in all common probability, result in injury to anyone" (emphasis added). *Id.* at 37-38.

SWEENEY, J., concurring. While I wholeheartedly concur in the majority's judgment in this cause, I believe that this court is remiss in not adopting Section 339 of 1 Restatement of the Law 2d, Torts (1965) 197, Artificial Conditions Highly Dangerous to Trespassing Children. As stated in my dissent in *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, 62, the anachronistic rule of law enunciated in *Railroad Co.* v. *Harvey* (1907), 77 Ohio St. 235, should be absolutely rejected in light of present-day realities. In fact, the *Harvey* holding was widely criticized even at the time of its inception, as evidenced by Justice R. M. Wanamaker's enlightened concurring opinion in *Ziehm* v. *Vale* (1918), 98 Ohio St. 306, 313-315. Hopefully, the majority opinion today will presage the eventual obliteration of the ill-conceived *Harvey* rationale, thereby putting Ohio into the mainstream of tort law, along with the overwhelming majority of courts throughout this nation. As of this time, Ohio is one of only three states that mysteriously fail to recognize the fairness of the "attractive nuisance" doctrine. See Comment, The Restatement's Attractive Nuisance Doctrine: An Attractive Alternative for Ohio (1985), 46 Ohio St. L. J. 135.

Unfortunately, until a firm majority recognizes the harsh folly inherent in the *Harvey* decision, this court will be forced to perpetrate and invent new distinctions without differences as it has today.


WRIGHT, J., concurring. I concur in the reversal of summary judgment for Hoover because Wills' complaint asserted that Hoover knew that unreasonably dangerous conditions were allowed to exist on the premises which caused injury to Brent Wills, a frequenter of those premises. Ordinarily, a landowner owes no duty to make his premises safe for a mere trespasser, young or old. The only duties an owner or occupier has to trespassers is to not willfully or wantonly injure them, or permit traps or pitfalls in their way; to warn them of danger actually known by the occupier to exist on the premises after he has knowledge of the trespassers' presence; and to use due care after discovering their peril. A landowner does not insure the safety of child trespassers upon his land. Such children have no greater right to go on the land of others than have adults. The mere possibility that children may trespass on the land does not impose a duty on the landowner to prepare for their safety. *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176; *Kahn* v. *James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E. 2d 836. Neither is the property owner bound to anticipate the presence of children merely because an artificial condition on the land would be likely to attract children. *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58. But if the owner or occupier knows that children trespass on a part of his property on which he maintains a dangerous and deadly condition, he must use reasonable care to avoid injury to such children. The foreseeability of harm creates a duty in the owner or occupier to use such care as the

circumstances of each case may require to protect others from injury.[3] Under such circumstances, the law requires landowners to take such reasonable precautions as providing a notice or warning that children can understand. If a child goes on the premises despite the warning, then he goes as a trespasser and the owner owes him no duty to protect him against danger.

Application of this doctrine is limited to latent dangers and does not apply to injuries resulting from obvious and patent dangers. The purpose of the duty is to protect children from dangers that they are unlikely to appreciate, but not to protect them against harm resulting from their own immature recklessness in the face of known danger. The owner or occupier is not liable to a child trespasser who in fact discovers the dangerous condition and appreciates the full risk involved but nonetheless chooses to encounter it.

---

[3] The following excerpt from Fulford, The Tort Liability of Possessors of Property to Trespassing Children in Alabama (1958), 11 Ala. L. Rev. 1, 15-16, further explains this doctrine:

"The rule on which straight negligen[ce] cases have proceeded is this: If a landholder creates or maintains upon his premises, where he can reasonably foresee the presence of children, a dangerous situation under circumstances which he should reasonably anticipate will likely or probably cause bodily harm to them, he is liable in damages to one proximately injured by such situation whether the child is an invitee, a licensee, or a trespasser.

"In such cases, the duty to exercise reasonable care rests upon the broad and fundamental principle that one who employs and uses a dangerous and deadly agency must exercise such care as is necessary to protect those who may reasonably be expected, through ignorance of the danger, to come into its close proximity. It is the apparent probability of danger from the inherently dangerous character of the instrumentality installed on private premises, rather than the owner's right to exclusive possession thereof, that creates and determines both the duty and measure of care required of the owner. The duty of reasonable care is owed by the landholder to invitees, licensees and trespassers alike if their presence in the area of danger should reasonably have been anticipated by him."

This doctrine is also set out in *Thompson v. Alexander City Cotton Mills Co.* (1914), 190 Ala. 184, 191, 67 So. 407, 410, which quotes Thompson on Negligence (1901), Section 1030:

" 'We now come to a class of decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: (1) That, where the owner or occupier of grounds brings, or artificially creates something thereon, which, from its nature, is especially attractive to children, and which, at the same time, is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. (2) That, although the dangerous thing may not be what is termed an 'attractive nuisance' (that is to say, may not have especial attraction for children by reason of their childish instincts), yet where it is left so exposed that they are likely to come in contact with it, and where their coming into contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them.' " See, also, 1 Restatement of the Law 2d, Torts (1965), Section 339, Artificial Conditions Highly Dangerous to Trespassing Children.

Because there are yet to be resolved genuine issues of material fact regarding Hoover's knowledge of the children's presence on the land, the character of the danger involved, and whether Hoover took reasonable action in maintaining the pumping rig on the land, summary judgment for Hoover was improperly granted.

Based on the foregoing, I concur.

HOLMES, J., concurring in part and dissenting in part. I concur in the majority's conclusion that the property owner and lessor, Bowerston, owed no duty to appellees and that summary judgment in its favor was proper. However, I must dissent from the majority's discussion and conclusion as to appellant Hoover's liability.

The general rule in Ohio is that an occupier of land owes no duty to trespassers, regardless of age, beyond that of refraining from willful, wanton, or reckless misconduct, which is not even alleged in the case *sub judice*. See *Railroad Co.* v. *Harvey* (1907), 77 Ohio St. 235, paragraph three of the syllabus (waterworks company has no liability when it has no knowledge of child's presence); *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176, 188 (no duty to trespassing eight-year-old when danger of overhang collapse was not caused by negligent operation of the sand pit, and when there was no notice that child was in peril); *Soles* v. *Ohio Edison Co.* (1945), 144 Ohio St. 373, 379 [29 O.O. 559] (no liability when there was no knowledge that children or adults ever went on premises and that fence was down); *Centrello* v. *Basky* (1955), 164 Ohio St. 41, 52 [57 O.O. 77] (no liability to ten-year-old child who was injured by an operating cement mixer parked on a public sidewalk as danger was not hidden); *Brooks* v. *Norfolk & Western Ry. Co.* (1976), 45 Ohio St. 2d 34 [74 O.O.2d 53], paragraph one of the syllabus (no liability to ten-year-old child who crushed his foot attempting to jump on board a moving train in a public park when there was no evidence of wanton misconduct on defendant's part); and *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, 61 (no liability to nineteen-month-old child who drowned in owner's swimming pool when presence of child was unforeseeable).

The only case which has held an occupier of land liable for injuries to a child trespasser was *Coy* v. *Columbus, Delaware & Marion Electric Co.* (1932), 125 Ohio St. 283.[4] There, the property held a high voltage

---

[4] Another case did hold an owner of an automobile liable for injuries sustained in 1913 by a four-year-old child (attempting to ride uninvited on the running board of the novel machine) because a "statical condition * * * [was] made perilous by * * * negligent operation" of the car after the owner had seen children flocking around it, including plaintiff, shooed them away, cranked the engine, shooed plaintiff away again, and drove off. *Ziehm* v. *Vale* (1918), 98 Ohio St. 306. That case is inapposite for the reason that it does not deal with landowner's duty and because here there is no allegation of negligent operation of the oil pump itself, but merely an allegation of negligence for failure to warn of or protect from danger. Since *Ziehm*, this court has held that it is not negligence to fail to keep trespassers off one's property. *Brooks, supra,* at 38, citing *Morgenstern* v. *Austin* (1959), 170 Ohio St. 113 [10 O.O.2d 9].

transformer and was bounded on one side by a pathway continuously used by adults and also by children as a playground, *i.e.,* the owner had knowledge of the frequent presence of children in the vicinity. The owner was held liable for a child's injuries by electric shock since it had let a protecting fence fall into disrepair, thus allowing such known children to have access to the latent, hidden and highly dangerous forces without a warning or sign of danger. Here, there is no evidence that the occupier of land had notice of frequent presence of children at the pump site. Hoover states in his deposition that he was told of only one child who had been seen on the pump site and whose mother was apprised of the situation.

Even if appellant did have notice that children were often in the area and acquiesced in such by not putting up signs or fences, his only duty would be to refrain from willful, wanton misconduct, not alleged here, and to use reasonable care to keep children, whose presence is known, away from hidden perils. *Hannan, supra,* at paragraph four of the syllabus. As to the second duty, the evidence is clear that appellant did not know Brent Wills was on the premises on the day of the accident and, in any event, a moving oil pump is not a hidden peril to a nine-year-old whose parents have warned him to stay away from the pump and who admits he knows he should stay away.

Additionally, the cases decided since *Coy, supra,* which do not impose liability, have overwhelmed its authority by their sheer numbers, and perhaps have even overruled it *sub silentio.* Whatever remaining force *Coy, supra,* has can be distinguished on the basis of this court's ruling in *Centrello, supra.* There we held that "* * * a stationary concrete mixer of standard construction in visible and audible operation, which is safe so long as one does not place any part of his anatomy inside it and thus come in contact with its moving parts, may not in and of itself be classed as a dangerous instrumentality or machine." *Id.* at 52. Here, an oil pump of standard construction, visibly and audibly in operation, is much more like the concrete mixer in *Centrello, supra,* and thus not a dangerous instrumentality, than it is like the high voltage electric transformer in *Coy, supra.*

In the most recent case on point, *Elliott, supra,* this court stated that the policy behind rejection of the attractive nuisance doctrine is to prevent imposition of a greater burden on landowners, who are often strangers to the children, than is imposed on parents. The unfairness in subjecting the

---

A second case has held that property owners or occupiers owe a greater duty to children than to adults under the same circumstances, *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 127 [47 O.O.2d 282]. However, that case dealt with a child who was invited as a social guest to the premises and thus was concerned with the duty to licensees, not trespassers. Additionally, the child in *Di Gildo* did not know the parked car was dangerous when the transmission gear was moved and, in the case *sub judice,* Brent Wills testified in his deposition that he knew he should stay away from the well site. Both of his parents had told him of the danger and to stay away from the well site, and he was capable of understanding such instructions, being nine years old and in the third grade.

former persons to lengthy, costly, and uncertain processes of determining liability is equally applicable to the case at bar. For all of the above reasons, I would order reversal of the appellate court's decision in all respects and reinstatement of the trial court's grant of appellants' motions for summary judgment.

LOCHER, J., concurs in the foregoing opinion.