**Leach v. Ironton**
*[Cite as 7 AOA 118]*

*Case No. 1918*
*Lawrence County, (4th)*
*Decided September 5, 1990*

*Randall L. Lambert, Lambert & McWhorter, Ironton, Ohio, for Appellants.*

*Thomas L. Klein, Klein, Smith & Klein, Ironton, Ohio, for Appellees.*

STEPHENSON, J.,

This is an appeal from a judgment entered by the Lawrence County Court of Common Pleas granting summary judgment in favor of the city of Ironton and Jack Hager (hereinafter respectively referred to as "Ironton" and "Hager"), defendants below and appellees herein, and dismissing the claims against them by Mildred Leach and Denny Leach, plaintiffs and appellants herein. Appellants assign the following error:

"THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHERE THERE EXISTED GENUINE ISSUES OF MATERIAL FACT AND THE GRANTING OF THE MOTION WAS NOT WARRANTED BY LAW.

"A. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT PURSUANT TO OHIO REVISED CODE SECTION 1533.181.

"B. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT PURSUANT TO A THEORY OF NEGLIGENCE WHERE THERE EXISTED GENUINE ISSUES OF MATERIAL FACT AND WHERE THE GRANTING OF THE MOTION WAS NOT WARRANTED BY LAW."

The facts pertinent to this appeal are as follows. On July 20, 1985, appellants were visiting with friends on a boat docked at the Ironton boat docks, hereinafter referred to as the "docks."[1] At approximately 8:45 pm., it began "misting rain" and appellants prepared to leave. In order to reach their car, appellants had to ascend a flight of concrete stairs from the boat docks to the parking area. While climbing these stairs, Mildred Leach slipped and fell, allegedly as a result of loose gravel strewn on the stairway. Appellant fell back and struck her head suffering a resultant injury.

On February 10, 1986, appellants commenced the action below alleging that appellees were both "jointly and individually negligent" and that they were strictly liable for the faulty construction and maintenance of the stairway which caused Mildred Leach to fall. Ironton and Hager filed their answers denying liability for the incident and, by way of affirmative defense, alleged that Mildred Leach had been contributorily negligent.

On May 12, 1989, appellees filed their joint motion for summary judgment arguing that they were exempt from liability under the recreational use statute of R.C. 1533.181 or, in any event, that appellants could not recover because Mildred Leach had knowledge of any dangerous condition and, therefore, was obligated to protect herself. Appellants duly filed a memorandum contra opposing the motion for summary judgment. On July 21, 1989, the court issued its decision, without opinion, granting summary judgment to appellees and on August 2, 1989, a judgment entry was filed dismissing the action below.

The ultimate issue posited for our review herein is whether the trial court erred in entering summary judgment in favor of appellees below. The correctness of rendering a summary judgment depends upon a "tripartite demonstration" that (1) there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one

conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66; *Bostic v. Connor* (1988), 37 Ohio St. 3d 144, 146.

As aforesaid, the trial court did not articulate its basis for entering summary judgment in favor of appellees. However, appellants argue that summary judgment was improper under either of the two grounds set forth in appellees' motion. We shall examine each of these grounds individually. First, appellants argue that, as a matter of law, the court could not have entered summary judgment under R.C. 1533.181. We agree.

The exemption provisions of R.C. 1533.181 are as follows:

"(A) No owner, lessee, or occupant of premises:

"(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

"(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

"(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."

The purpose of the recreational use statute "is to encourage owners of premises suitable for recreational pursuits to open their lands for public use, it follows that where the land in question is not held open to the public, the immunity does not apply." *Loyer v. Bucholz* (1988), 38 Ohio St. 3d 65, 66-67. The deposition of Hager below reveals, in part, the following testimony concerning the dock's availability to the public:

"Q. So, on July 20, 1985, the only services you were providing were providing spaces for people to place their-- to dock their boats?

"A. Dock their boats.

"Q. You charge a fee for these services, I presume?

"A. Right.
"***

"Q. As long as they rented the space and paid for it, basically what they did on their boat, as long as it was lawful, was their own-- whatever they did was unto them; is that right?

"A. Right.

"Q. Now, this also included then the right for them to invite or have guests on their boats?

"A. That's right. *We have a sign that states 'members and guest only.'*" (emphasis added.)

Thus, if the docks were open *only to members and guests*, it follows that they were not open to the general public and, therefore, do not come within the purview of those premises for which immunity was statutorily granted under R.C. 1533.181. In *Loyer, supra* at 67, the supreme court likened the sort of premises, to which this statute would apply, as being a park open to the general public without charge. However, in the cause *sub judice*, the docks are more analogous to a multi-unit residential premises open only to tenants and their guests. Thus, we are not persuaded that exemption from liability under R.C. 1533.181 would apply in this instance.

Moreover, the statute will not operate to exempt the owner, or the lessee, from liability unless the injured party is a recreational user. A recreational user is defined in R.C. 1533.18(B) as one to whom permission is granted, without payment of a fee or consideration to the owner or lessee, to enter upon the premises to engage in certain recreational pursuits. In *Miller v. Dayton* (1989), 42 Ohio St. 3d 113 at paragraph one of the syllabus, the supreme court held that, in determining whether one is a recreational user under the statute, the court's analysis must focus on the character of the property upon which the injury occurs and the type of activity for which the property is held open to the public. In analyzing the character and type of activity associated with the property, we turn to the following testimony given by Hager at deposition:

"Q. And in operating the boat docks, you lease out docking space to, say, people that have boats; would that be the best way to describe that business?

"A. Right.
"***

"Q. Besides selling these few items at retail, basically the only services you were providing were for them to dock their boats there?

"A. That's right.

"Q. Okay. No other recreational-- really, no recreational facilities? You were just renting them a space to put their boat?

"A. That's right.
"***

"Q. Okay. I may have asked this. I don't mean to be repetitive, but just to make sure. *Your facilities are not open for recreational pur-*

*poses unless someone pays a fee or someone is there with a fee payer; is that correct?*

"A. Right." (emphasis added.)

Thus, the activity carried on at the docks is more in the nature of a commercial enterprise than public recreation. Moreover, Hager's admission that only a fee payer, or one accompanied by a fee payer, may gain admittance to the premises is contrary to the definition of a "recreational user."

A person is not a recreational user under R.C. 1533.18(B) if that person pays a fee or other consideration to enter the premises. *Moss v. Dept. of Natural Resources* (1980), 62 Ohio St. 2d 138 at paragraph two of the syllabus. Appellees argue, in their motion for summary judgment, that while her host may have paid a fee to use the premises, Mildred Leach was, nonetheless, a "gratuitous user" thereof by virtue of being a fee payer's guest. We are not persuaded by this distinction.

The purpose of granting exemption from liability under R.C. 1533.181 is to open up land for recreational purposes to the general public without payment of a fee. *Loyer, supra* at 67. It would be inconsistent with that purpose to exempt appellees herein where a fee was paid by someone, even if not by the injured party. In other words, the docks herein were not open to the general public, but only to paying customers and their guests. For these foregoing reasons, the trial court below could not have properly granted appellees motion for summary judgment under the recreational use statute.

Appellants also argue that the court could not have entered summary judgment on the alternative basis of common law negligence. However, after reviewing the record below, we disagree. Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 188. In the cause *sub judice,* the measure of that duty owed to Mildred Leach is dependant upon her status with the appellees at the time she was on the premises. As both sides apparently concede, her status was that of an "invitee"[2] and, therefore, appellees owed her a duty to exercise ordinary care and to maintain the docks in a reasonably safe condition. *Holdshoe v. Whinery* (1968), 14 Ohio St. 2d 134, 137.

However, appellees were not insurers of her safety. *Id.* Furthermore, there was no duty to protect her from dangers which were known to her or which were so obvious and apparent to her that she could reasonably be expected to discover them and protect herself against them. *Sidle v. Humphrey* (1968), 13 Ohio St. 2d 45 at paragraph one of the syllabus.

The deposition of Mildred Leach below reveals the following testimony concerning,not only her knowledge of gravel on the stairway, but also the condition of the stairs in general:

"Q. Why don't you describe, in your own words, what happened on July 20th, 1985.

"A. ***

"Well, it was misting rain, and my husband said at a quarter until nine, he said, 'Don't you think we better go, Mildred?' And I said, 'Yes.' So, we started walking up those steps, and he had a hold of my hand, and he said, 'I'm afraid you're going to fall. There's no guardrails or anything.' He said, 'You know, it's so dangerous--" some of them were separated far apart, and he said, 'Be sure and step over that.' Well, I did. But when I got up there, I don't know whether it was three steps on top or not, but there was gravels [sic] washed down on the steps. And that is the truth. Well, when I hit them steps with my tennis shoes, it slipped me this way, sideways.

"***

"Q. Okay. Did you see any of this gravel on the steps prior to the time you fell?

"A. I think I did. Because when I put my feet up there-- yes, I did see gravels, yeah. I think the rain had washed them down there.

"***

"Q. When you went down the steps, you didn't see any gravels on the steps at that time, did you?

"A. Yes, I think I did. I think I did.

"Q. You're not sure?

"A. But I think there was gravels washed down there on them steps. And I am pretty sure I'm right."

In addition, the testimony of Denny Leach in his deposition below reveals the following:

"Q. All right. When you were going down to the boat dock when you first arrived, did you see any gravel or anything on those steps?

"A. Well, yes, sir, I noticed some gravel on there.

"Q. How much?

"A. Well, not too much. Just, you know, here and there.

"Q. Was it just on the upper steps or on the lower steps?

"A. I'd say maybe we was about half way up, as far as I can remember.

"Q. When the accident occurred?

"A. Uh-huh.

"Q. When you arrived, on what step did you notice any gravel when you arrived?

"A. What steps did I see gravel on?

"Q. Yeah, when you arrived at the boat dock?

"A. I just seen them starting down the steps. I can't remember which steps though.

"Q. Just steps at the top maybe? A little bit at the top?

"A. I'd say maybe all the way down. You know, when slag starts going down somewhere, they fall all the way down."

It is well settled that the party moving for summary judgment is the one who bears the burden of showing that there exists no genuine issue of material fact. *Harless, supra* at 66. *Mitseff v. Wheeler* (1988), 38 Ohio St. 3d 112, 115. Appellees have sustained this burden. The foregoing testimony clearly shows no genuine issue of material fact, in that Mildred Leach either had knowledge of the loose gravel prior to allegedly slipping thereon, or that it was so obvious that she should reasonably have discovered it.

The appellees having properly carried their burden of production, appellants then had a burden of rebuttal to supply evidentiary materials supporting their position. *See Campco Distributors. Inc. v. Fries* (1987), 42 Ohio App. 3d 200, 201; *Whiteleather v. Yosowitz* (1983), 10 Ohio App. 3d 272, 275. In their memorandum contra summary judgment, appellants submitted no rebuttal evidence whatsoever. Rather, citing *Clark v. Becker Discount Drug* (1975), 43 Ohio App. 2d 126, appellants argued that appellees not only were required to show that Mildred Leach was aware of the gravel, but also that she appreciated the risk involved. Appellants continue that appellees have failed to demonstrate such an appreciation.

However, the *Clark* decision is inapposite to the cause *sub judice* as it concerns the doctrine of assumption of the risk. The doctrine of assumption of the risk is a defense to liability for negligence. *See Wever v. Hicks* (1967), 11 Ohio St. 2d 230 at paragraph one of the syllabus. There is, however, no liability for negligence where there is no breach of duty. *Wills, supra* at 186. It follows that where there is no duty to protect an invitee from known perils on the premises, there can be no breach of that duty for failure to do so, and, therefore, no negligence. Thus, the existence, or nonexis-

tence, of a defense such as assumption of the risk would be irrelevant. Accordingly, appellants argument is not persuasive.[3]

In sum, an occupier or owner of premises is under no duty to protect an invitee from dangers which are known to such invitee. *Sidle, supra* at paragraph one of the syllabus. Appellants have sufficiently demonstrated that Mildred Leach knew, or should have known, of the gravel on the stairway. Appellees have failed to supply any evidence in rebuttal. Thus, summary judgment was proper and appellant's assignment of error is overruled. The judgment is affirmed.

*Judgment affirmed.*

HARSHA, J., concurs with opinion.

GREY, J., dissents with opinion.

I respectfully dissent.

I agree with the majority that Mrs. Leach was a business invitee. As an invitee, Hager owed her a duty to exercise ordinary care to maintain the dock in a reasonably safe condition. See, *Holdshoe v. Whinery* (1968), 14 Ohio St. 2d 134. Hager had no duty to protect her against dangers which were known to her or were so obvious and apparent that she could reasonably be expected to discover them and protect herself against them. See, *Sidle v. Humphrey* (1968), 13 Ohio St. 2d 45.

Mrs. Leach testified that the gravel was obvious and apparent and that she ascended the stairs with knowledge of the danger. She assumed the risk. The defenses of contributory negligence and assumption of the risk merge under the comparative negligence statute, R.C. 2315.19. See, *Anderson v. Ceccardi* (1983), 6 Ohio St. 3d 110. Therefore, assumption of the risk is not an absolute bar to Mrs. Leach's claim of recovery. The gravel on the steps did not lose its character as a danger just because Mrs. Leach knew that it existed and assumed the risk. Mrs. Leach's knowledge of the danger and assumption of the risk did not release Hager from his duty to maintain the dock in a reasonably safe condition.

Under the majority construction of the holding in *Sidle, supra,* there never could be a recovery by a business invitee. In such a case the plaintiff would always be asked if he was looking out for his own safety. If he says yes, then he cannot recover because, under the majority holding, he appreciated the risk.

This is, in my opinion, a complete break with our traditional concepts of torts and of negligence. The whole idea of imposing liability on the owner of a premises is to provide an incentive to repair the defect so that people will not be injured. Under the majority holding in this case, the incentive for the owner is to make his premises more unsafe, and to make the premises so visibly unsafe that any reasonable person could not say that he did not see and appreciate the danger. Under the majority holding here, the owners who are most negligent are least likely to be held liable; the invitees who are most careful are least likely to recover.

I do not believe this is what the Supreme Court intended when they held in *Ceccardi, supra* at page 113:

"The conduct previously considered as assumption of the risk by the plaintiff shall be considered by the trier of the fact under the phrase 'contributory negligence of the person bringing the action' under R.C. 2315.19; and the negligence of all parties shall be apportioned by the court or jury pursuant to that statute."

In this case there is, for summary judgment purposes, evidence of negligence by the owner in maintaining the stair in a dangerous condition, and evidence of the plaintiff attempting to traverse these stairs. The comparative negligence of each of these parties is a question for the jury.

Thus, I dissent.

HARSHA, J., concurring.

I concur in the principal opinion and judgment and write separately because I believe the dissent fails to discern the meaning of "obvious and apparent" dangers as found in *Sidle, supra,* and this case. Obvious and apparent dangers are those conditions which a reasonable person would expect to be naturally present and for which a person is charged with the duty of taking their own precautions. These are things which are inherent in the reality of everyday life. For instance, if a person goes outside on a wintery day, he or she should expect snow covered sidewalks and parking lots. The law concerning slips and falls on natural accumulations of snow and ice reflects this reality. Likewise, people entering business premises during downpours are expected to be aware of the dangers of such natural occurrences, and act accordingly. See *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St. 3d 203.

Contrary to the assertions found in the dissent, this rationale does not encourage owners of premises to make them visibly unsafe in an effort to avoid liability. The obvious distinction which the dissent overlooks is that the factors upon which we rely are natural occurrences that are part and parcel of the experiences of everyday life. We do not require invitees to expect that owners will maintain their premises in a dangerous condition. We do not sanction misfeasance, malfeasance, or nonfeasance where an owner has a duty to invitees. Because the law places no duty upon the owner in this instance, the doctrine of assumption of the risk/comparable negligence is not applicable as the principal opinion points out.

If this were a case where a duty existed, I would agree that it would be the factfinder's responsibility to apportion comparative fault, thus precluding summary judgment. However, that is not the case we are asked to decide. The stairway in question led from a boat dock up the bank to a parking area. The stairway was uncovered and therefore was obviously susceptible to rain and other natural weather conditions. Moreover, any gravel on the steps was from the nearby lot and road. Certainly, appellees were under no duty to keep a large force of employees at the concrete stairway to sweep away rain and gravel from the steps. See *Paschal, Id.* at pg. 204. Accordingly, I concur in judgment and opinion.

---

[1] The docks are a business operated by Hager on property which he leases from the City of Ironton.

[2] An "invitee" is a business visitor who is rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest. *Scheibel v. Lipton* (1951), 156 Ohio St. 308 at paragraph one of the syllabus. In *Bowins v. Euclid General Hosp.* (1984), 20 Ohio App. 3d 29, 30, the Court of Appeals of Cuyahoga County held that a visitor to a patient in a hospital is an "invitee" of the hospital. The court reasoned that hospitals expect patients to have visitors and, thus, it was a part of their business. Similarly, in the cause *sub judice,* Hager testified that "members" keeping their boats at the docks were also expected to have visitors. Entertaining guests in that fashion is, no doubt, part of the attraction for customers. Thus, we conclude that it was a part of the docks' business to have visitors on the premises and the status of such visitors is that of an invitee.

[3] Even assuming, *arguendo,* that appellants were required to demonstrate that Mildred Leach appreciated the risk of

the gravel being on the stairway, we find a sufficient showing of that fact in her testimony at deposition. As previously cited, appellant testified that her husband warned her that the stairway was "dangerous." Appellant then testified, *inter alia,* that she noted "there was gravels washed down on the steps." It is clear that without any affidavit or other evidentiary item to refute these statements, reasonable minds could only conclude that Mildred Leach was both aware and appreciative of the condition of the stairway in general and the presence of the gravel in particular.