OPINION
{¶ 1} Plaintiff-appellants, Dawn Parke and Richard L. Murray, Jr., co-administrators of the estate of Michael Wade Murray, deceased, appeal the decision of the Trumbull County Court of Common Pleas, entering judgment in favor of defendant-appellee, Ohio Edison Company. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Diana Davis owns a house on Boyd Road in Masury, Ohio. At the back of her property stood a line of three Silver Maple trees. Behind the trees, stands a 69,000 volt or 69kV subtransmission conductor on the Maysville-Masury transmission line. Ohio Edison is responsible for maintaining the line, including vegetation control. Davis decided to have one of the trees removed because it was "dying." The distance between this tree and the transmission tower has not been measured. Davis testified that the transmission lines were above and behind the tree she wanted taken down and that the tree itself was "not near the lines."
 {¶ 3} Davis hired Murray, the fiancé of a friend of hers, to remove the tree. Murray had a degree in electrical engineering, was currently employed at WCI Steel, and would, on occasion, trim trees for people. About two weeks before removing the tree, Murray went to Davis' property and visually inspected the tree. Davis asked Murray if he thought the power lines would be a problem and Murray said he did not see a problem. Murray also told Davis to ask her neighbors on the other side of the wires for permission to have the tree fall on their property.
 {¶ 4} On June 10, 2001, Murray arrived at Davis' property with his fiancée's son to remove the tree. Murray worked with a chainsaw from atop an aluminum ladder, held by his fiancée's son. As Murray was cutting through one of the branches, Davis heard a loud "clap." As the limb began to fall, Davis saw Murray jump from the tree, land on his feet, and fall face down. Murray had been electrocuted and died shortly thereafter. Burn marks were found on Murray's right hand and thigh.
 {¶ 5} In April 2002, appellants filed suit against Ohio Edison but subsequently dismissed the action. Appellants refiled their suit in March 2004, alleging negligence and spoliation of the evidence. Ohio Edison moved for summary judgment on both claims. Appellants filed a brief in opposition to Ohio Edison's motion relative to the negligence claim but did not oppose the motion relative to the spoliation claim. On November 22, 2004, the trial court granted summary judgment in Ohio Edison's favor on both appellants' claims. This appeal timely follows.
 {¶ 6} Appellants raise the following assignment of error: "The trial court erred in entering summary judgment in Defendant-Appellee's favor."
 {¶ 7} Ohio Edison filed a cross-appeal and raises the following assignment of error: "The trial court erred when it concluded that Ohio Edison owned and operated the electrical power line involved in this action."
 {¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue of material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brownv. Cty. Commrs. of Scioto Cty. (1993), 87 Ohio App.3d 704, 711
(citation omitted).
 {¶ 9} "A power company erecting and maintaining equipment, including poles and wires * * * for the purpose of transmitting and distributing electrical current, is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, maintenance and inspection of such equipment and is responsible for any conduct falling short of that standard." Hetrick v.Marion-Reserve Power Co. (1943), 141 Ohio St. 347, paragraph two of the syllabus; Otte v. Dayton Power Light Co. (1988), 37 Ohio St.3d 33, 38.[1] "Such company is not liable to one injured as the result of some unusual occurrence that cannot fairly be anticipated or foreseen and is not within the range of reasonable probability." Hetrick, 141 Ohio St. 347, paragraph three of the syllabus.
 {¶ 10} "Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party." Wills v.Frank Hoover Supply (1986), 26 Ohio St.3d 186, 188. Appellants argue that, "since it was to be reasonably anticipated that people cut down dead trees in their backyards," Ohio Edison owed a duty to Murray to guard against the possibility of such trees coming in contact with electrical current.
 {¶ 11} Appellants are correct that Ohio Edison owes a duty to maintain its lines, conductors and other equipment in such a way that those who rightfully come into contact with such equipment will not be harmed. SeeBrady Fray v. Toledo Edison Co., 6th Dist. No. L-02-1260, 2003-Ohio-3422 (resident electrocuted while trimming dead tree); Dolata v. Ohio EdisonCo. (1981), 2 Ohio App.3d 293 (child electrocuted while climbing in tree); Holden v. Cincinnati Gas Elec. Co. (1937), 57 Ohio App. 448
(worker electrocuted while pruning trees).
 {¶ 12} According to the vegetation management practices followed by Ohio Edison, 69kV lines shall be cleared of vegetation for a distance of no less than fifteen feet from the conductor. Pruning occurred regularly on a five-year cycle. Lines are inspected, however, twice a year within this cycle. Davis testified that she had this tree trimmed in 2000. The undisputed evidence is that, prior to Murray's removal of the tree, the tree was not in contact with either the wires or the conductor Ohio Edison was responsible for maintaining.
 {¶ 13} It is also Ohio Edison's policy to remove "priority trees," i.e. trees that "are either dead, diseased, * * * [or] severely leaning" toward transmission lines. Appellants maintain that, on the strength of Davis' testimony, the tree in question was dying. Davis' testimony, however, is strongly contradicted by other evidence in the record. Michael Jones, regional forester for Ohio Edison, inspected the tree on the day of Murray's death. Jones found no evidence that the tree was diseased or dying. Donald Loosemore, an acquaintance of Davis, removed the wood from Davis' property. Loosemore testified that the wood was "all good, * * * all hard." Finally, there were over twenty photographs of the tree in question taken after Murray's death in evidence. These photographs do not show any indication that the tree was diseased or dying, a fact confirmed by appellants' own expert witness upon inspection of the photographs.
 {¶ 14} While the evidence as to the condition of the tree overwhelmingly favors Ohio Edison, for summary judgment purposes we must view this evidence in a light most favorable to appellants. Construing the evidence on this issue leads to the conclusion that a genuine issue exists whether the tree in question was dying. Ohio Edison's duty to remove the tree does not arise unless Ohio Edison could have reasonably anticipated the result herein. "[T]here is no duty to guard when there is no danger reasonably to be apprehended." Hetrick, 141 Ohio St. at 359.[2]
In the present case, there was no danger reasonably to be apprehended.
 {¶ 15} The tree Murray felled was not in contact with the transmission conductor or the wires and was not in any immediate danger of contacting them. Davis testified that the tree "was not near the lines" and estimated the distance between the tree and the lines as between eight and fifteen feet. She had had this tree trimmed the previous year. Murray believed that the tree would clear the conductors when felled.
 {¶ 16} Assuming that the tree was dying, Ohio Edison had no notice of the fact. According to Jones, Loosemore, and the photographs, the tree appeared healthy. Ohio Edison regularly inspected the lines. Davis did not consider the tree a problem relative to the transmission tower and did not notify Ohio Edison that the tree was dying or that she intended to remove it. Ohio Edison had no reason to anticipate that this tree was in danger of contacting its power lines.
 {¶ 17} Without notice or apprehension of the danger, Ohio Edison was under no to duty to guard against it. Appellants argue that it is reasonable to anticipate that residents will cut down trees near power lines. This is true. But Ohio Edison is not responsible for every tree that is felled near its lines. The implication of appellants' concept of Ohio Edison's duty is that a utility company is responsible for ensuring that no trees, whether healthy or not, exist in such proximity to its lines that the possibility of contact exists. Such a standard of care is clearly excessive and unreasonable.[3] There is a duty to prune trees that are growing into electrical lines and there is a duty to remove those trees that pose a danger of falling into lines. Neither of these conditions has been shown to exist in the present case.
 {¶ 18} The situation in this case is distinguishable on these points from the similar situation in Brady Fray, where a resident had been electrocuted while trimming branches near power lines. In that case, the electric wires ran through the trees and the branches in question had been dead for at least a year. There was also evidence that a city inspector had advised removing the branches, that the utility company was contacted several times to have the branches removed, and that the utility company had misjudged the hazard posed by the branches. 2003-Ohio-3422, at ¶¶ 4-5. In Brady Fray, the utility should have apprehended the danger. Cf. Dolata, 2 Ohio App.3d at 295 ("the propensity of youngsters to climb and play in trees is a propensity of which power companies must take cognizance and which renders possible injury to the child who comes into contact with power lines, a reasonably anticipated fact").
 {¶ 19} Since appellants have failed to establish a duty on Ohio Edison's part toward Murray, it was not error for the trial court to grant summary judgment. Appellants' assignment of error is overruled.
 {¶ 20} In its assignment of error on cross-appeal, Ohio Edison argues that the trial court erred in its factual determination that Ohio Edison "owns and operates a high voltage electrical power line through the backyard of the premises owned by * * * Davis." Ohio Edison correctly points out that the only evidence relative to the ownership of the lines is that they are owned by American Transmission Systems, Inc. and that American Transmission Systems contracts with Ohio Edison for vegetation control and maintenance. Therefore, the trial court's finding is in error.
 {¶ 21} For the foregoing reasons, appellants' assignment of error is without merit and Ohio Edison's assignment of error on cross-appeal is with merit. The trial court's finding that, "[t]he Defendant owns and operates a high voltage electrical power line through the back yard of the premises owned by Dee Davis," is reversed and held to be of no effect. In all other respects, the November 22, 2004 judgment entry of the Trumbull County Court of Common Pleas granting summary judgment in Ohio Edison's favor is affirmed.
Rice, J., concurs.
O'Neill, J., concurs in judgment only.
[1] Ownership of a line is not determinative of the duty owed to those who might reasonably be anticipated to be injured as a result of the failure of those charged with maintaining the line to exercise due care. See Fortman v. Dayton Power Light Co. (1992), 80 Ohio App.3d 525,530.
[2] It is worthwhile to quote in full Hetrick's comments on reasonable anticipation, taken from Shearman and Redfield on Negligence, Rev.Ed., 50, Section 24: "Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated. Reasonable anticipation is that expectation created in the mind of the ordinarily prudent and competent person as the consequence of his reaction to any given set of circumstances. If such expectation carries recognition that the given set of circumstances is suggestive of danger, then failure to take appropriate safety measures constitutes negligence. On the contrary, there is no duty to guard when there is no danger reasonably to be apprehended. Negligence is gauged by the ability to anticipate. Precaution is a duty only so far as there is a reason for apprehension. Reasonable apprehension does not include anticipation of every conceivable injury. There is no duty to guard against remote and doubtful dangers."141 Ohio St. at 358-359.
[3] As a practical matter, no trees of any appreciable height would be allowed to stand near wires. After Murray's death, Ohio Edison wanted to remove the other two Silver Maples on Davis' property which, if improperly felled, could also potentially contact the wires. Davis protested the complete removal of the trees and, therefore, the trees were merely trimmed back so that the branches were not near the wires.