JOURNAL ENTRY AND OPINION
{¶ 1} Geral Rodriguez appeals from a trial court order which granted summary judgment in favor of Rockefeller Building Associates ("RBA") following a personal injury accident at its parking facility. Rodriguez claims that material issues of fact remain as to whether RBA breached its duty of care. We reverse and remand.
 {¶ 2} The record reveals that RBA owns a parking facility known as the Rockefeller Parking Garage in Cleveland. In order to manage this facility, and others, in April 1997, RBA entered into a Parking Management Agreement with Network Parking, Ltd. ("Network") to both manage and operate three Cleveland parking facilities.
 {¶ 3} Rodriguez began working for Network as a parking attendant at its West Superior Road facility on September 17, 2001. As part of his attendant duties, he was also responsible for light maintenance of the garage, including the weekly sweeping of the garage stairwells. Rodriguez performed his weekly duties without incident for approximately one year.
 {¶ 4} On August 7, 2002, Rodriguez was sweeping the concrete stairwell of the garage, beginning on the fifth level and working his way down from each level, as was his custom. However, when Rodriguez approached the third step from the bottom of ground level, he tripped on a loose twenty-four-inch piece of metal nosing on the edge of the step. Rodriguez lost his balance on the loose metal and fell to the floor, causing back and hip injuries.
 {¶ 5} In April 2004, Rodriguez filed suit claiming that the injuries sustained in the fall were caused by RBA's negligence. RBA answered the complaint and denied the allegations. It then moved for summary judgment, asserting that: (1) it did not have control over the premises; (2) it was not given notice of the alleged defect; and (3) the hazard was open and obvious.
 {¶ 6} The trial court granted the motion and found that RBA "did not have control over the premises, nor was * * * given notice of the alleged defect; therefore, it had no duty to repair" the concrete step. Rodriguez appeals from this order in a single assignment of error which states:
"THE TRIAL JUDGE ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT IN FAVOR OR DEFENDANT-APPELLEE AND AGAINST PLAINTIFF-APPELLANT. CIV.R. 56(C)."
 {¶ 7} In reviewing an award of summary judgment, this court must apply a de novo standard of review. Cole v. AmericanIndustry Resources Corp. (1998), 128 Ohio App.3d 546, 552. We apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Fleming,68 Ohio St.3d 509, 511, 1994-Ohio-172. "A `material fact' depends on the substantive law of the claim being litigated." Hoyt, Inc. v.Gordon Assocs., Inc. (1995), 104 Ohio App.3d 598, 603, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248.
 {¶ 8} The record indicates that Rodriguez's status as a business invitee is unquestioned. Typically, a business owes its invitees a duty of ordinary care in maintaining its premises in a reasonably safe condition and a duty to warn its invitees of hidden or latent dangers. Paschal v. Rite Aid Pharmacy, Inc.
(1985), 18 Ohio St.3d 203, 203.
 {¶ 9} RBA first asserts that it did not have control over the garage by virtue of the Parking Management Agreement between RBA and Network with a contract date of June 1, 1997,[1] and claims that reasonable minds interpreting the agreement must conclude that Network assumed liability for incidents such as the one involved here.
 {¶ 10} Although RBA maintains that the agreement makes Network responsible for "maintaining the cleanliness and condition of the garage" (Appellee's Brief at 3, emphasis added), paragraph four of the agreement appears to refer solely to the cleanliness of the facilities and states:
"Network Parking shall clean any litter and trash to keep the stations in a presentable condition, and shall comply with all laws and ordinances pertaining to the operation of parking stations, including obtaining licenses and permits required for the operation of the stations."
 {¶ 11} In addition to outlining Network's responsibilities to staff the facilities and keep them in a presentable condition, the agreement also negates Network's liability for certain acts or omissions by RBA. Paragraph nine of the agreement states:
"Network Parking shall not be liable for any incident caused by or arising from any act of omission of the Owner, or any of the Owner's agents, employees, licensees, or invitees, or by or from any incident on or about the stations or any casualty thereon occasioned by the negligence or other wrongful acts of the Owner or any of the Owner's agents, employees, licensees or invitees whether active or passive."
 {¶ 12} Further, paragraph ten of the agreement states in pertinent part:
"Owner shall determine, at Owner's discretion, whether and to what extent any cautionary warnings, security devices, or security services may be required to protect patrons in and about the stations. Owner further agrees to indemnify and hold harmless Network Parking from and against any claims, demands, suits, liabilities or judgments arising from Network Parking's alleged failure to warn, to guard or to protect persons in or about the stations from and against intentional wrongful acts and any harm or injury resulting therefrom."
 {¶ 13} While the agreement does outline the management and operational responsibilities, it is silent when apportioning responsibility for the overall inspection and safety of the facilities. The dissent maintains that paragraph ten refers to the retained responsibility to determine "security measures" and the agreement to indemnify Network for a failure to protect persons from wrongful acts of third parties, rather than the overall safety of the premises. Such an argument, however, fails to account for the entire character of the agreement and still leaves the question of the agreement's silence as to safety and inspection responsibilities unanswered. Since the question in this case hinges largely on the apportionment of "control," and it is clear from the agreement between RBA and Network that the parties failed to adequately apportion such control, a question of fact remains to be determined by a jury. Such a question of fact precludes the grant of summary judgment as a matter of law.
 {¶ 14} RBA attempts to negate such a question of fact by asserting that the loose metal nosing was so open and obvious as to negate liability. We are mindful that a premises-owner owes no duty of care to a person entering those premises with respect to dangers or obstructions that are so obvious that one may reasonably be expected to discover them and protect against them.Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79, 80,2003-Ohio-2573. This principle is based upon the legal recognition that one is put on notice of a hazard by virtue of its open and obvious character. Id. Where a danger is obvious, an owner may reasonably expect that persons entering the premises will discover those hazards and take proper measures to protect themselves. When applicable, the open and obvious doctrine abrogates the duty to warn and completely precludes negligence claims. Hobart v. City of Newton Falls, Trumbull App. No. 2002-T-0122, 2003-Ohio-5004.
 {¶ 15} Although RBA places great emphasis on the fact that Rodriguez swept the same stairwell for approximately one year and failed to notice a defective condition, that Rodriguez did not perceive the danger, or that Network failed to advise of such a potential danger, does not mean that no dangerous condition existed, or that the condition was so open and obvious as to negate liability.
 {¶ 16} Rodriguez stated in his deposition that he was completely unaware of the loose metal nosing and that, as he had done for approximately one year, he swept the stairs by working in a backward and downward fashion. The question of whether appropriate steps were taken to prevent reasonably foreseeable injuries must be resolved by the trier of fact. Burks v. ChristHospital (1969), 19 Ohio St.2d 128, 131. We therefore find that the record contains sufficient evidence to create a question of fact as to any alleged open and obvious nature of the metal nosing.
 {¶ 17} Further, any contention that RBA was not notified of any dangerous condition of the metal nosing lacks merit. The record contains an expert report by Eric O. Pempus, A.I.A., C.C.S., which concluded that the stairways were in very poor condition, with "metal stair nosings still missing and partially affixed to some steps, and loose on others. Portions of the concrete steps are still eroded, chipped and cracked." (Pempus Report at 1.) Pempus went on to find that, "there is a direct causal relationship between the negligent maintenance and upkeep of the Rockefeller Building concrete parking steps and Mr. Rodriguez's fall," and that, "the deteriorated condition of the steps would have persisted for an extended period of time, at least two to three years prior to Mr. Rodriguez's fall, giving the owner of the parking garage, Rockefeller Building Associates, constructive notice of their deteriorated condition." (Pempus Report, at 3.)
 {¶ 18} Moreover, in Perry v. Eastgreen Realty Co. (1978),53 Ohio St.2d 51, 52, the Ohio Supreme Court found that:
"We disagree with appellant's contention that an invitee must demonstrate that a peril was actually known to the owner of premises. The better view is that once the evidence establishes that a dangerous condition existed, and that it is a condition about which the owner should have known, evidence of actual knowledge on his part is unnecessary.The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. * * *." Prosser on Torts (4 Ed. 1971), 392-93.
 {¶ 19} We find that such evidence presents material questions of fact which preclude the grant of summary judgment. The dissent calls Network a "lessee" and cites to Wells v. Frank HooverSupply (1986), 26 Ohio St.3d 186, for the proposition that a lessor is not liable for injuries to a third party in the absence of authority to exercise control over the premises to the exclusion of any control by the lessee. Id. at 188. UnlikeWells, however, the parking agreement between RBA and Network was careful to refer to RBA solely as "Sublessor" or "Owner" and to refer to Network only as "Network Parking" without any further reference to any assumed status. Therefore the "status" of the parties is not as clear as that presented in Wells,
particularly in light of the fact that the parking agreement fails to identify Network as a lessee and Network's denial at oral argument that it was a "lessee." Instead, this case rests on the determination and apportionment of control between RBA and Network. As such, this issue creates a question of fact for the jury's determination and thus precludes the grant of summary judgment.
 {¶ 20} We therefore find that Rodriguez's sole assignment of error has merit.
 {¶ 21} The ruling of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion. It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., concurs Rocco, J., Dissents (See SeparateDissenting opinion attached.)
[1] We note that although this document was attached to RBA's motion for summary judgment, it is not dated or signed by either party, and instead merely contains a "Received May 3, 2004, Standard [illegible] Claims, Commercial Claims" stamp.
 DISSENTING OPINION