STEELE et al., Appellants,

v.

McNATT; Cardinal Federal Savings Bank et al., Appellees.

[Cite as *Steele v. McNatt* (1995), 102 Ohio App.3d 558.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67284.

Decided April 17, 1995.

*Timothy A. Shimko & Associates, Timothy A. Shimko, Janet I. Stich* and *Theresa A. Tarchinski,* for appellants.

*Michele M. Lazzaro, Brent M. Buckley* and *G. Michael Curtin,* for appellees.

Harper, Judge.

Appellants, Thomas and Rosemary Steele, appeal from the summary judgment granted by the Cuyahoga County Court of Common Pleas in favor of appellees, Cardinal Federal Savings Bank ("Cardinal"), Pak Yan Lui and Pak Tim Lui ("the Luis"). For the reasons set forth below, we affirm.

## I

Appellants brought an action for the wrongful death of their minor son, Keith Steele, and personal injury to their minor daughter, Jamie Lee Robinoux, against appellees, Cardinal and the Luis. The pertinent facts are as follows.

In 1978 Cardinal financed a loan for the purchase of the property located at 6021 Wakefield Avenue in Cleveland, Ohio. After the purchaser defaulted on her loan, Cardinal purchased the property at a sheriff's sale in 1985. Cardinal made certain repairs to the property and rented it out to tenants. In September 1986, Cardinal sold the property to the Luis. On October 15, 1988 appellants leased the property from the Luis. The property at all times was a single-family home.

On October 23, 1988 one Billy McNatt intentionally set fire to the premises located at 6017 Wakefield Avenue. The fire spread to 6021 Wakefield. Rosemary Steele was at home when the house was engulfed in fire. She was able to escape with one of her children. Two-year-old Keith Steele died in the fire. Also injured in the fire was appellants' daughter Jamie Lee Robinoux.

## II

Appellants assign the following error for our review:

"The trial court erred in granting Defendant[s], Pak Yan Lui and Pak Tim Lui, and Defendant, Cardinal Federal Savings Bank, Motions for Summary Judgment, as genuine issues of material fact exist as to whether said Defendants were negligent per se due to violations of applicable statutes and Defendants were not entitled to judgment as a matter of law.

"A. Introduction

"B. The trial court erred in granting summary judgment to appellees as appellees owed a duty to provide smoke detectors for appellants.

"C. The trial court erred in granting summary judgment to appellees as appellees owed a duty to protect appellants from the criminal activity of a third party where appellees' failure to comply with their statutory duty was the direct and proximate cause of the damages sustained by appellants.

"D. The trial court erred in granting summary judgment to appellees Pak Yan Lui and Pak Tim Lui as appellants' wrongful death action on behalf of Keith Steele was not precluded under Ohio Revised Code Section 2125.01.

"E. Appellants are entitled to recover punitive damages against appellee Cardinal Federal upon remand to the trial court.

"1. Punitive damages are recoverable by appellant[s] under R.C. Section 2305.21.

"2. Appellants' claim for punitive damages is not barred by R.C. Section 2315.21."

■ Appellants argue in their first assignment of error that the trial court erred in granting summary judgment where genuine issues of material fact exist as to whether appellees were negligent *per se* in violating the Cleveland Municipal Housing Code regarding the installation of smoke detectors.

In analyzing summary judgment under Civ.R. 56, this court held in *Klesch v. Reid* (1994), 95 Ohio App.3d 664, 673, 643 N.E.2d 571, 577, that:

"Civ.R. 56(C) provides in pertinent part as follows:

" 'Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'

"The law of summary judgment is settled in Ohio. A court cannot grant summary judgment unless it determines that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to only one conclusion when such evidence is viewed most strongly in favor of the nonmovant and the conclusion is adverse to that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. The possibility of granting the motion for summary judgment forces the nonmoving party to produce sufficient evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. See, also, *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 617 N.E.2d 1068. Thus, to overcome a motion for summary judgment, the nonmoving party must present specific facts and not unsupported allegations or blind reliance upon the pleadings, unless the pleadings are such that no further evidence is necessary to warrant a denial of the motion. See *Shaw v. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295. See, also, *Siegler v. Batdorff* (1979), 63 Ohio App.2d 76, 17 O.O.3d 260, 408 N.E.2d 1383."

We begin by holding that appellants have failed to allege any material facts that show a duty owed them by Cardinal.

Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 161, 497 N.E.2d 1118, 1120. We shall review the propriety of granting appellees' motions for summary judgment separately.

The record shows that Cardinal sold the property in question to the Luis in September 1986. The record also shows that the injuries which are the cornerstone of this appeal occurred on October 23, 1988. We have failed to notice any privity of contract of sale or lease of estate between Cardinal and appellants. It is our opinion that outside an agreement or law establishing a relationship to the contrary, the prior owners of a property are divested of all rights and obligations to the said property on the date the title to the property is transferred to the new owners. So, since Cardinal was not a titled owner of the property in question on October 23, 1988, and appellants cannot cite any agreement or law holding them accountable, it no longer had control over it and, therefore, cannot be held liable to any injuries resulting from ownership of the property.[1] See *Hendrix v. Eighth & Walnut Corp.* (1982), 1 Ohio St.3d 205, 207, 1 OBR 230, 232, 438 N.E.2d 1149, 1151; see, also, *Wills v. Frank Hoover Supply, supra.*

The trial court's grant of summary judgment in favor of Cardinal is proper and is affirmed.

With regard to appellees, the Luis, appellants contend that the grant of summary judgment was also improper. Appellants argue that the Luis failed to comply with the city of Cleveland ordinance regarding the installation of smoke detectors. Appellants contend that such violation was negligence *per se.* Mr. Steele also charges that he discussed the lack of smoke detectors with Pak Yan Lui and that Pak Yan Lui agreed to equip the home with smoke detectors.

In *Shroades v. Rental Homes* (1981), 68 Ohio St.2d 20, 25–26, 22 O.O.3d 152, 155–156, 427 N.E.2d 774, 777–778, the Ohio Supreme Court held that a violation of a statute which sets forth specific duties constitutes negligence *per se.* The *Shroades* court concluded that in addition to negligence *per se,* the plaintiff must also establish that the injuries sustained were proximately caused by the defendant's negligence. See, also, *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114–115, 6 OBR 170, 174–175, 451 N.E.2d 780, 783–784.

---

1. Cardinal is not a landlord under any statutory definition. See R.C. Chapter 5321.

In the instant case, to establish negligence *per se*, appellants must show that the applicable ordinance they cite is a legislative enactment which imposed a specific duty upon the Luis for the safety and protection of appellants which the Luis have failed to observe. See *Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870; *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 533 N.E.2d 732. As noted by the Ohio Supreme Court in *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, at paragraph three of the syllabus:

"Where there exists a *legislative enactment* commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; *but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case.*" (Emphasis added.) See, also, *Burnett v. Rice* (1988), 39 Ohio St.3d 44, 45, 529 N.E.2d 203, 204; *Smiddy v. The Wedding Party* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212; *Ornella v. Robertson* (1968), 14 Ohio St.2d 144, 43 O.O.2d 246, 237 N.E.2d 140; *Bush v. Harvey Transfer Co.* (1946), 146 Ohio St. 657, 33 O.O. 154, 67 N.E.2d 851.

R.C. 5321.04 provides in pertinent part as follows:

"(A) A landlord who is a party to a rental agreement shall:

"(1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety;

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." See, also, *Anderson, supra,* 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780; *Meacham v. Miller* (1992), 79 Ohio App.3d 35, 606 N.E.2d 996.

In the instant case, we shall examine the pertinent ordinances of the city of Cleveland at the time of the fire to determine the duty owed by the Luis to appellants. The 1979 ordinance of the city of Cleveland which was in effect on the date of the accident provides in part:

"391.231 Smoke Detectors.

"(a) *Requirement.* It shall be the responsibility of the owner of each new and existing occupied dwelling unit located in a Class A or Class B structure to install smoke detectors in each such dwelling unit as hereinafter provided. Such smoke detectors shall be capable of sensing visible or invisible particles of combustion and providing a suitable audible alarm thereof; further, they shall be installed by March 1, 1979, in the manner hereinafter provided (unless any other provision of

County, State or Federal Law shall require installation before that date). Failure to install smoke detectors as and where required by such date will subject the property owner to the penalties set forth in subsection (j) hereof and to the remedies available to the City in Chapter 3103 of the Codified Ordinances of the City of Cleveland, Ohio, 1976, except Section 3103.99 thereof."

Class A and B structures are defined as follows:

"Multiple Dwellings

"3125.25   Residential Occupancy—Multiple Dwelling Defined.

"(a) 'Residential occupancy—multiple dwelling classification' includes all buildings and parts of building of residential occupancy classification except those occupied as dwelling houses or row houses.

" * * *

"(c) Class A Multiple Dwellings. *'Class A* multiple dwellings' are multiple dwellings which are occupied more or less permanently for residence purposes by more than two families and in which the rooms are occupied in apartments, suites, or groups, each comprising a dwelling unit.   Class A multiple dwellings shall include, among others:

"Apartment houses.

"Apartment hotels.

"Studio apartments.

"Tenement houses.

"Bachelor apartments.

"Duplex apartments.

"Kitchenette apartments.

"Garden-type apartments.

"(d) Class B Multiple Dwellings.   Class B multiple dwellings are multiple dwellings which are occupied, as a rule transiently, as the more or less temporary abode of individuals or families with or without meals, and in which, as a rule, the rooms are occupied singly and not as dwelling units.   Class B Multiple dwellings shall include, among others:

"Hotels.

"Lodging houses.

"Rooming houses.

"Boarding houses.

"Furnished room houses.

"Tourist homes.

"Motel.

"Club houses with sleeping accommodations.

"Fraternity houses.

"Sorority houses.

"Dormitories.

"Convents.

"Monasteries.

"School and college buildings containing sleeping accommodations."

A plain reading of the ordinance reveals that the Cleveland City Council did not include a single-family dwelling within the class of dwellings it mandated for installation of smoke detectors. Appellants argue that Ordinance 391.231 by its terms created a duty on the Luis to install a smoke detector on the property.

Ordinance 391.231(f) provides as follows:

"Ord. 391.231 Smoke Detectors

"(f) Certification of Change in Occupancy. After March 1, 1979, at every change of occupancy of every dwelling unit occasioned by or incidental to a sale, lease or sublease of such unit, it shall be the duty of the grantor thereof (i.e., the seller, lessor or sublessor as the case may be) to certify, before occupancy, to the new occupants that all smoke detectors as required by this section (or other applicable laws) are installed and in proper working condition. Failure to comply with this subsection shall be punishable as set forth herein."

A careful reading of Ordinance 391.231 reveals that the phrase "as required by this section" refers only to those dwellings as defined *supra* which did not include single-family dwellings. It also allows smoke detectors to be installed at dwellings as required by "other applicable laws." Appellants argue that one such "other applicable" law contemplated by Ordinance 391.231(f) is the "CABO" (Council of American Building Officials) regulations.

CABO, as adopted by the Cleveland City Council in Ordinance Chapter 3121, reads in pertinent part as follows:

"3121  Adoption of CABO One and Two Family Dwelling Code

"Under provisions of Ohio Revised Code Section 731.231, there is adopted, for the purpose of establishing rules and regulations for the construction, alteration, repair, and maintenance of detached one, two, and three family dwellings not more than three stories in height, and their accessory structure the 1983 edition of the 'CABO One and Two Family Dwelling Code,' *with the 1984 Amendments*

*thereto except such portions as are hereinafter deleted, modified or amended.* A complete copy of such Code shall be kept on file at the Office of the Building Official and in the Law Library of the County. The Clerk shall keep copies available for distribution to the public at cost." (Emphasis added.)

"3121.02   Amendments to Code.

"The following sections of the CABO One and Two Family Dwelling Code are amended for this Building Code as follows:

"(a) Title—Section R–101 entitled 'Title' in Chapter 1 shall be amended, and as amended, shall read:

"Section R–101–Title

"These provisions shall be known as the 'One, Two and Three Family Dwelling Code,' may be cited as such, and will be referred to herein as 'this Code.'

"(b) Scope—Section R–103 entitled 'scope' in Chapter 1 shall be amended, and as amended, shall read:

"Section R–103–Scope

"The provisions of this Code apply to other construction, alteration, repair and maintenance of detached one, two and three family dwellings not more than three stories in height, and their accessory structures.

"Compliance with the requirements of this Code shall be considered as prima facie evidence of compliance with this Building Code."

We continue to disagree with appellants as our reading of Ordinances Chapter 3121 reveals that the provisions are applicable to "construction, alteration, repair and maintenance of detached one, two and three family dwellings," none of which is applicable to the property in question. Our reasoning is further bolstered by a 1989 attempt by the city council to include single-family dwellings within the fire prevention code.[2] The provision reads, beginning with the preamble, as follows:

"Whereas, the Ohio Basic Building Code ('OBBC') Section 1013.3.5 incorporated in the City of Cleveland's Building Code by Codified Ordinance 116A–35 requires smoke detectors in all new residential construction *except* one, two, and three-family dwelling units; and now, therefore,

"Be it ordained that the Council of the City of Cleveland:

"Section 1.  That the Codified Ordinance of the City of Cleveland, 1976 are hereby supplemented by enacting new Sections 392.01 to 392.06 inclusive and Section 392.99 thereof to read respectively as follows:

"Sec. 392.02

---

2. This provision in Ordinances 1594, Section 392 was repealed in 1990.

Ord. No. 1594–89 reads in part as follows:

"(a) Owners of one, two and three-family dwellings shall install a minimum of one (1) smoke detector adjacent to the sleeping areas in each dwelling unit. At least one additional smoke detector shall be installed on each additional story of the dwelling * * *."

We have carefully reviewed the relevant ordinance and have come to an unfortunate conclusion that appellees owed no duty to provide smoke detectors to the single-family dwelling leased by appellants at the time of the fire.[3]

■ Appellants also argue that appellee "Pak Yan Lui orally assured Mr. Steele that he would install smoke detectors. He did not." To allow a jury trial based only on Pak Yan Lui's assurance to install a smoke detector would invite too much speculation. First, there is no evidence that appellants would not have moved in had it not been for the assurance. Second, there was no date certain by which the installation was to take place, failure to comply of which would arguably constitute a breach of promise. Assuming, *arguendo,* that Pak Yan Lui's assurance to install a smoke detector could be interpreted to be a breach of promise, we are not prepared to hold, outside negligence *per se,* that such conduct was either *causa sine qua non* or *causa proxima* of the injuries.

Accordingly, we overrule appellants' first and second assignments of error.

### III

Our disposition of appellants' first and second assignments of error renders moot the remaining assignments dealing with third-party criminal acts and punitive damages. So we decline to address them. See App.R. 12.

*Judgment affirmed.*

NUGENT and O'DONNELL, JJ., concur.

---

3. While we do not question legislative wisdom, we cannot help but wonder why the city council in their infinite wisdom thought it wise to protect those in multiple dwellings and not those in single-family dwellings. It is unfortunately beyond imagination and appellate review.