ROBINSON, Appellant,

v.

C & L ASSOCIATES, L.L.C., et al., Appellee.

[Cite as *Robinson v. C & L Assoc., L.L.C.*, 188 Ohio App.3d 649, 2010-Ohio-3118.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23672.

Decided July 2, 2010.

650

John J. Scaccia and Krystle N. Marko, for appellant.

Robert J. Janes, for appellee.

GRADY, Judge.

{¶ 1} Plaintiff-appellant, Teressa Robinson, appeals from an order of the court of common pleas that granted the motion of defendant-appellee, C & L Associates, for a summary judgment in an action Robinson commenced on a claim for personal injuries.

{¶ 2} On April 7, 2006, C & L Associates, L.L.C. ("C & L") leased an apartment in its Erica Court apartment complex to Robinson for a term of one year. Within one month after her occupancy began, Robinson experienced problems with the oven in the apartment that C & L had provided. The door to the oven stuck when Robinson attempted to open it.

{¶ 3} Robinson first reported the problem with the oven door to Patricia Yates, C & L's manager of the apartment complex, in May 2006. Yates told Robinson that the problem would be fixed. Robinson also reported the oven problem to the maintenance manager at the apartment complex. Robinson testified that she reported the problem to Yates on two occasions and to the maintenance manager on at least three occasions between May and November 2006. During that time, the condition of the oven door continued to deteriorate, making it more difficult to open. C & L never acted to repair the door of the oven in Robinson's apartment.

{¶ 4} On October 27, 2006, following several months of negotiations, C & L sold and conveyed its title to the Erica Court apartment complex to OMC Erica Court YML, L.L.C., and OMC Erica Court MH, L.L.C. (collectively, "OMC"). OMC hired TNC Property Management to manage the apartment complex. Five days later, on November 1, 2006, Robinson suffered burns to her arm when the oven door again stuck as she attempted to open it, causing Robinson to accidentally fall against the hot inner surface of the oven door.

{¶ 5} On October 31, 2008, Robinson commenced an action against C & L, OMC Erica Court YML, TNC Property Management, and C & M Apartments L.L.C., on claims for relief alleging negligence and nuisance. C & L filed a motion for summary judgment on Robinson's claims for relief, which the trial court granted on August 31, 2009. Robinson voluntarily dismissed her claims against the remaining defendants in the action, with prejudice, and filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

{¶ 6} "The trial court erred in granting the motion for summary judgment of defendant-appellee, C & L Associates, LLC."

{¶ 7} When reviewing a trial court's award of summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 8} "The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing, Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. See also Civ.R. 56(C).

{¶ 9} C & L moved for summary judgment, contending that it owed no duty of care to Robinson on the date the accident occurred. The trial court granted C & L's motion, explaining:

{¶ 10} "Here, Robinson does not contest that C & L sold its ownership interest in the subject property to OMC Erica Court YML, LLC and OMC Erica Court MH, LLC prior to Robinson's injury. At the time of Robinson's injury, C & L had relinquished occupation, control, and possession of the subject property. It is clear that C & L was not the owner at the time of Robinson's injury and there is no evidence to suggest that C & L was the landlord of the property, as defined

by Ohio landlord tenant laws, at the time of Robinson's injury. As such, C & L did not have a duty to comply with Ohio Revised Code § 5321.04.

{¶ 11} "Further, this Court finds that the record does not contain an express promise by C & L to make repairs. Thus, Robinson's argument that C & L had a continuing duty despite the sale of the apartment complex is not well taken. As a result, C & L owed Robinson no duty and Robinson cannot recover for negligence."

{¶ 12} The lease agreement between C & L and Robinson imposed no express duty on C & L to repair the door to the oven in Robinson's apartment. However, Robinson's claim for relief against C & L for negligence arises out of C & L's alleged breach of a duty imposed on C & L by operation of law in the Landlords and Tenants Act, R.C. Chapter 5321. The issue is whether C & L's sale of the property five days before Robinson was injured relieves C & L of any liability for the alleged breach.

{¶ 13} R.C. 5321.04(A) provides:

{¶ 14} "A landlord who is a party to a rental agreement shall do all of the following:

{¶ 15} "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

{¶ 16} " * * *

{¶ 17} "(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him."

{¶ 18} "R.C. 5321.04 imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. Furthermore, the purpose of the statute is to protect persons using rented residential premises from injuries." *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 25, 22 O.O.3d 152, 427 N.E.2d 774. Therefore, "[a] landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. 5321.04." Id. at syllabus. "In an action for personal injuries to a tenant proximately caused by a violation of a landlord's statutory duty under R.C. 5321.04, the landlord is negligent per se." *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780, at paragraph two of the syllabus, citing *Shroades*.

{¶ 19} " 'Negligence per se does not dispense with a plaintiff's obligation to prove that the breach of the duty was the proximate cause of the injury complained of, nor does it obviate a plaintiff's obligation to prove that the

landlord received actual or constructive notice of the condition causing the statutory violation.' " *Sabolik v. HGG Chestnut Lake Ltd. Partnership,* 180 Ohio App.3d 576, 2009-Ohio-130, 906 N.E.2d 488, at ¶ 13, quoting *Allstate Ins. Co. v. Henry,* Butler App. No. CA 2006–07–168, 2007-Ohio-2556, 2007 WL 1531494, ¶ 11.

■ {¶ 20} The trial court found that C & L was relieved of its obligations under R.C. 5321.04(A) and all potential liability for Robinson's injuries when it sold the apartment complex on October 27, 2006. We do not agree with such a broad proposition of law.

{¶ 21} There are no Ohio cases addressing the precise issue before us. However, the Ohio Supreme Court has relied on the Restatement of Property 2d, Landlord and Tenant, when considering issues involving landlord liability for breaches of a statutory duty. *Shroades,* 68 Ohio St.2d at 24, 22 O.O.3d 152, 427 N.E.2d 774. Section 16.3(2) of the Restatement states:

{¶ 22} "An obligation that is imposed on one of the parties to a lease without the aid of an express or implied promise may be imposed by operation of law. The location of the burden and benefit of that obligation after a transfer of an interest in the leased property depends on what is appropriate to further the purposes of imposing the obligation."

{¶ 23} Comment b to Section 16.3 of the Restatement clarifies the importance of the timing of a breach of an obligation by a prior landlord:

{¶ 24} "In general, the accomplishment of the objectives behind the imposition of the obligations that inhere in the landlord-tenant relationship does not require that the transferor who moves out of privity of estate with the person entitled to enforce the obligation be liable for a breach of the obligation which occurs after the transfer. *He does continue liable for a breach of the obligation which occurs before the transfer.*" (Emphasis added.)

{¶ 25} Further, illustration 1 to Section 16.3 of the Restatement provides helpful insight to a set of facts very similar to the facts before us:

{¶ 26} "L leases residential property to T. * * * L transfers his reversionary interest to L1. * * * If the condition of the leased property at the time L transfers his reversionary interest to L1 was in violation of the housing code standards, L would continue liable on his obligation and L1 would also pick up a liability on such obligation after the expiration of a reasonable period of time because allowing the condition to continue is a breach of L1's obligation. L, however, would remain primarily liable as between L and L1. (In regard to when L's possible tort liability ends for a default existing at the time of the transfer, see § 17.6, Comment f.)"

{¶ 27} Section 17.6, Comment f of the Restatement, in turn, refers to Section 17.5, Comment *l* of the Restatement, which states:

{¶ 28} "When the landlord makes a promise to repair the leased property his contractual liability on that promise does not cease when he transfers his reversionary interest in the leased property except to the extent provided in § 16.1. Although this contractual liability may continue, it does not follow that his tort liability under this section continues. If a transferee of the landlord becomes primarily liable on the promise to repair as a result of the transfer under the rule of § 16.1, the tort liability of the landlord under the rule of this section ceases as to any future breach of the promise. The transferee of the landlord is not liable on the promise to repair to the extent it is broken by the landlord before the transfer (see § 16.1) and hence the transferee is subject to tort liability only for a breach of the promise to repair which occurs subsequent to the transfer * * *."

{¶ 29} Section 16.1 of the Restatement clarifies a landlord's obligation to perform a promise following a transfer of the title to leased property. Section 16.1 states:

{¶ 30} "(1) A transferor of an interest in leased property, who immediately before the transfer is obligated to perform an express promise contained in the lease that touches and concerns the transferred interest, continues to be obligated after the transfer if:

{¶ 31} "(a) the obligation rests on privity of contract, and he is not relieved of the obligation by the person entitled to enforce it; or

{¶ 32} "(b) the obligation rests solely on privity of estate and the transfer does not terminate his privity of estate with the person entitled to enforce the obligation, and that person does not relieve him of the obligation."

{¶ 33} The duties that the Landlords and Tenants Act imposes rests on the privity of estate between those parties that their lease agreement creates. C & L's sale and transfer of the title to the apartment complex to OMC terminated the privity of estate between C & L and Robinson. However, and pursuant to § 16.1(b) of the Restatement, C & L remained liable for its prior failure to repair the oven even after it sold the rental property, because Robinson did not relieve C & L of its prior obligation to make repairs. We believe that Section 16.1 of the Restatement is consistent with the principles of the Landlords and Tenants Act, and supports a finding that C & L may be liable for personal injuries Robinson suffered on November 1, 2006, that were a direct and proximate result of C & L's prior failure to meet its obligations under R.C. 5321.04(A), before C & L transferred title to the property to OMC on October 27, 2006.

{¶ 34} Continuing to hold a transferor landlord potentially liable for injuries a tenant suffered less than a week after a transfer of the rental property is consistent with the purpose of R.C. 5321.04(A), which is to "protect persons using

rented residential premises from injuries." *Shroades*, 68 Ohio St.2d at 25, 22 O.O.3d 152, 427 N.E.2d 774. The purpose of the Landlords and Tenants Act would be frustrated if a landlord could escape all potential liability for personal injuries directly and proximately caused by the landlord's failure to fulfill its obligations under R.C. 5321.04 simply because the injuries occurred a few days after the landlord's sale of the rental property. Indeed, such a scenario could encourage landlords to allow their rental property to deteriorate while a sale of the property was pending.

{¶ 35} A transferor landlord's continuing liability for its prior failure to comply with R.C. 5321.04 does not relieve the transferee landlord of its duties under that section, which imposes a duty on the transferee when it acquires title to the real property and enters into privity of estate with a tenant. Instead, the transferor landlord's continuing liability may diminish the share of damages for a tenant's injuries for which the transferee is responsible, much as a duty of contribution does. As time passes and the transferee has had a reasonable opportunity to discover a defective condition, or it is reported by the tenant, the transferee landlord's failure to make repairs becomes an intervening cause that could or should have eliminated the hazard, creating a break in the chain of causation between the tenant's injuries and the transferor landlord's breach, relieving the transferor landlord of liability. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 323, 58 O.O. 119, 130 N.E.2d 824. A tenant who has no control over the sale of the rental property should not bear the risk of injury during this period. The transferor landlord is better positioned to protect itself by complying with its statutory obligations or negotiating an indemnification clause in its contract of sale with the successor landlord.

{¶ 36} Moreover, we note that the liability of a transferor landlord remains subject to the burdens ordinarily placed on a plaintiff in a negligence action. A plaintiff must show that the transferor landlord breached a duty owed to the plaintiff and that the injuries suffered by the plaintiff directly and proximately resulted from the transferor's breach of that duty. We have discussed the matter of an intervening and superseding cause that absolves the former landlord of liability. That liability may also be diminished or extinguished on a finding of contributory negligence on the part of the tenant. Those are questions for the trier of fact to resolve.

{¶ 37} The trial court and C & L cited *Steele v. McNatt* (1995), 102 Ohio App.3d 558, 657 N.E.2d 575, for the proposition that a prior landlord cannot be held liable for any injury to a tenant that occurred after the landlord sold the property. *McNatt*, however, is distinguishable from the case before us.

{¶ 38} In *McNatt*, Cardinal Federal Savings Bank purchased a house in Cleveland at a sheriff's sale. Cardinal made certain repairs to the property and

rented it out to tenants. Cardinal subsequently sold the property to Pak Yan Lui and Pak Tim Lui. Over two years later, the Luis leased the property to tenants. Eight days later, a fire engulfed the property, injuring the tenants' minor daughter and killing their minor son. The tenants sued both Cardinal and the Luis for the wrongful death of their son and personal injury to their daughter. They alleged that the property was not in compliance with the city of Cleveland ordinance regarding the installation of smoke detectors in rental properties. The trial court granted summary judgment to the defendants and the plaintiffs appealed.

{¶ 39} On appeal, the Eighth District affirmed the trial court's grant of summary judgment to Cardinal. The court explained:

{¶ 40} "The record shows that Cardinal sold the property in question to the Luis in September 1986. The record also shows that the injuries which are the cornerstone of this appeal occurred on October 23, 1988. We have failed to notice any privity of contract of sale or lease of estate between Cardinal and [the plaintiffs]. It is our opinion that outside an agreement or law establishing a relationship to the contrary, the prior owners of a property are divested of all rights and obligations to the said property on the date the title to the property is transferred to the new owners. So, since Cardinal was not a titled owner of the property in question on October 23, 1988, and [the plaintiffs] cannot cite any agreement or law holding them accountable, it no longer had control over it and, therefore, cannot be held liable to any injuries resulting from ownership of the property." Id. at 562, 657 N.E.2d 575.

{¶ 41} In *McNatt*, the prior owner of the rental property sold the property over two years before the tenant was injured. Further, the prior owner never had a landlord-tenant relationship with the injured tenant that created a privity of estate between them. Here, however, C & L had a landlord-tenant relationship with Robinson as recent as a week before Robinson's injuries, Robinson alerted C & L on at least five occasions that her oven needed repair, and C & L's employees assured Robinson that the oven would be repaired. Therefore, *McNatt* is inapposite.

{¶ 42} The assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, J., concurs.

DONOVAN, P.J., concurs in judgment only.