[Cite as *Rudd v. Bartlett*, 2016-Ohio-3403.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| EDWARD A. RUDD, ADMINISTRATOR OF THE ESTATE OF MARCI ANNE PILTZ, | : | **O P I N I O N** |
| | : | |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2015-P-0051** |
| | : | |
| - vs - | : | |
| | : | |
| TODD M. BARTLETT, | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2013 CV 00528.

Judgment: Affirmed.

*Joshua M. Leizerman* and *Michael J. Leizerman,* E.J. Leizerman & Associates, L.L.C., 3450 West Central Avenue, Suite 328, Toledo, OH 43606 (For Plaintiff-Appellant).

*Kimberly K. Wyss* and *Robert J. McBride, Sr.,* Day Ketterer Ltd., 200 Market Avenue North, Suite 300, P.O. Box 24213, Canton, OH 44701 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Edward Rudd, Administrator of the Estate of Marci Anne Piltz, appeals from the judgment of the Portage County Court of Common Pleas, granting a directed verdict in favor of defendant-appellee, Todd M. Bartlett, and dismissing Rudd's Complaint. The issue to be determined in this case is whether there is sufficient evidence to present a negligence claim to the jury when a homeowner is

unaware that smoke detectors in his home may be malfunctioning and two friends inside the home die in a fire. For the foregoing reasons, we affirm the decision of the lower court.

{¶2} On May 17, 2013, Rudd filed a Complaint against Bartlett, arising from the death of his daughter, Marci Anne Piltz, in a house fire. Bartlett is the owner of a residence located on Aberagg Road in Atwater, Ohio, where the fire occurred. While visiting that residence on March 19, 2009, Piltz died in a fire. The Complaint alleged that Bartlett negligently failed to properly maintain the residence, including smoke detectors, which was the proximate cause of Piltz's death, and contained a claim for loss of consortium on behalf of Piltz's children/beneficiaries.

{¶3} On June 21, 2013, Bartlett filed his Answer.

{¶4} Bartlett filed a Motion for Summary Judgment on June 30, 2014. A Brief in Opposition was filed on August 13, 2014. In an August 27, 2014 Order and Journal Entry, the Motion for Summary Judgment was denied, since there were "genuine issues of material fact in dispute in regards to the cause of the fire and the status of the decedent at the time of the fire."

{¶5} A jury trial was held on May 20 and 21, 2015. The following testimony and evidence were presented.

{¶6} On the afternoon of March 19, 2009, a fire occurred at Bartlett's home. A 911 call was made by Piltz, who was frantic and stated that she could not get out of the home. Upon responding to the home, firefighters located Piltz in a middle bedroom. According to the death certificate, Piltz died of smoke inhalation. Another individual, Dave Smith, also died in the fire. The Ohio State Fire Marshal report found the cause of

2

the fire was undetermined, although "the most probable accidental ignition source for this incident is the mishandling of smoking materials."

{¶7} Todd Bartlett, the homeowner, was at work when the fire occurred. He was unaware at that time that Piltz and Smith, his friends, were at the home, although he testified that they were not trespassing. Smith had moved into Bartlett's home around 2005, the year when the home was purchased, but was "on and off there." Bartlett testified that he and Smith had had a fight and Smith moved out around a week before the fire, a fact he did not believe he told investigators. Smith had been at Bartlett's house the day before the fire, as he typically conducted visitation with his son there. That night, Smith left to return his son to his mother. Bartlett allowed Smith to borrow his phone in case he needed to contact his son's mother.

{¶8} On that night, Piltz left Bartlett a voicemail telling him that Smith was at her home and not to worry. Bartlett explained that she left this message because Smith was supposed to return his phone that night.

{¶9} Bartlett thought the smoke detectors were working at the time of the fire. He tested them when he first bought the house in 2005 and changed the batteries every fall. Smith had removed the battery from the smoke detector outside the bedroom at some point, but the smoke detector was subsequently returned to the ceiling. Bartlett testified, "I don't know why, if the battery wasn't in it, it would have been put back on the ceiling." He agreed that it was a good idea to have smoke detectors to give "early notification" of a fire.

3

**{¶10}** Edward Rudd, Piltz's father, noted that he brought the present lawsuit on behalf of Piltz's children. He was aware that Piltz and Smith were in a romantic relationship around the time of the fire.

**{¶11}** Rudd, a retired firefighter, testified about the need to have smoke detectors as a "first line of defense in a fire." From Rudd's knowledge as a firefighter and based on information from the National Fire Protection Association, people have a 50 to 70 percent better survival chance with working smoke detectors in the house.

**{¶12}** At the close of Rudd's case, Bartlett moved for a directed verdict, arguing that Piltz had been a licensee and that he did not act willfully, wantonly, or recklessly. He also contended that, regardless of Piltz's status, Bartlett owed no duty to maintain a smoke detector. The trial court granted the motion for a directed verdict and the case was dismissed. This was memorialized in a June 8, 2015 Judgment Entry.

**{¶13}** Rudd timely appeals and raises the following assignment of error:

**{¶14}** "The trial court erred to the prejudice of Plaintiff by granting Defendant's motion for directed verdict."

**{¶15}** "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

**{¶16}** A trial court's decision to grant a motion for directed verdict is reviewed under a de novo standard. *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238,

4

959 N.E.2d 1033, ¶ 22; *O'Day v. Webb*, 29 Ohio St.2d 215, 280 N.E.2d 896 (1972), paragraph three of the syllabus ("[a] motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence"). "A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." (Citations omitted.) *Dennison v. Lake Cty. Commrs.*, 11th Dist. Lake No. 2013-L-067, 2014-Ohio-4294, ¶ 52.

{¶17} Rudd argues that there was sufficient evidence that reasonable minds could come to a conclusion in his favor as to each element of his claims, noting that the trial court did not specify which elements were unsupported by evidence. Rudd contends that he proved the smoke detectors were not working, this was the proximate cause of Piltz's death, and Bartlett breached his duty to maintain working smoke detectors for the benefit of Piltz, who was the guest of Bartlett's tenant, Smith.

{¶18} "[I]n order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8.

{¶19} "In Ohio, the status of the person who enters upon the land of another * * * define[s] the scope of the legal duty that the landowner owes the entrant." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996); *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). In this case, there is a dispute as to Piltz's status and thus, what duty would be owed to her.

5

{¶20} Specifically, Rudd claims that Smith was a tenant and as his invited guest, the legal duty owed to Piltz was the same as a tenant. The Ohio Supreme Court has held that "[a] landlord owes to a tenant's guest the same duty that it owes a tenant in regard to R.C. 5321.04(A)(3): to keep the common area in a safe and sanitary condition." *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 23. We must consider, then, whether Smith was Bartlett's tenant.

{¶21} A tenant is "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." R.C. 5321.01(A). A rental agreement includes "any agreement or lease, written or oral, which establishes or modifies the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties." R.C. 5321.01(D). In this case, it is clear that there was not a "typical" landlord-tenant agreement, such as a written contract requiring the payment of rent every month. However, according to the Fire Marshal report, Smith "stayed in the house and paid rent when he had money." Bartlett testified that Smith had his own room in the house, containing his bed and clothes.

{¶22} The issue of whether Smith still resided with Bartlett at the time of the fire is also subject to dispute. Bartlett testified that Smith was no longer living with him at that time. Evidence was presented that Smith had been at the home the night before the fire and still had items there. Also on the night before the fire, he borrowed Bartlett's cell phone and Piltz called Bartlett to tell him Smith would not return to the home on that night. Taking these facts with the limited evidence of a landlord-tenant relationship, there is little evidence to show whether Bartlett was truly Smith's landlord. Given that

6

this matter was dismissed on a directed verdict, however, we will consider whether Bartlett was negligent, presuming he was a landlord. *Broz v. Winland*, 68 Ohio St.3d 521, 526, 629 N.E.2d 395 (1994) (Civ.R. 50(A)(4) requires the trial court to give the party against whom the motion is made "the benefit of all reasonable inferences that may be drawn from the evidence"). Regardless, we cannot find that Bartlett was required to ensure that the smoke detectors were working or that it was proven he failed to maintain the smoke detectors.

**{¶23}** A landlord must "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition," R.C. 5321.04(A)(2), and "[k]eep all common areas of the premises in a safe and sanitary condition." R.C. 5321.04(A)(3). However, a landlord "will be excused from liability * * * if he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora v. Wenzel,* 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000), syllabus; *Sorensen v. DeFranco*, 2013-Ohio-5829, 6 N.E.3d 664, ¶ 30 (11th Dist.) ("liability will not be imposed unless the landlord had notice of a defective condition"). There is no evidence that Bartlett had notice that the smoke detectors were not working. He testified that he changed the batteries every year. While Smith had removed a battery at some point, Bartlett believed that since the smoke detector had been returned to the ceiling, the battery was inside. This does not amount to notice of a "defect," especially given that "[g]eneral knowledge of the possibility of a defect does not rise to the level of either actual or constructive notice." *Burnworth v. Harper*, 109 Ohio App.3d 401, 406, 672 N.E.2d 241 (4th Dist.1996). Under these facts, we cannot say Bartlett had actual notice or should have known that the smoke detectors were not operational, especially

7

given that no evidence of any defects with the detectors themselves was presented. It is also unclear if the detectors were even malfunctioning, although they cannot be heard in the recording of the 911 call made by Piltz.

**{¶24}** As noted above, R.C. 5321.04 requires a landlord to keep common areas safe and sanitary and the premises habitable, but also requires that he "[m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances * * * supplied or required to be supplied by the landlord." R.C. 5321.04(A)(4). A smoke detector does not fall under these categories to support the negligence per se claim asserted by Rudd.

**{¶25}** A review of case law in this area reveals that negligence findings for inadequate smoke detectors have been made related to the failure to comply with city safety codes. *Baraby v. Swords*, 166 Ohio App.3d 527, 2006-Ohio-1993, 851 N.E.2d 559, ¶ 30 (3d Dist.) (a landlord "may be liable for injuries suffered as a result of violating a building code, which requires the proper installation and maintenance of smoke detectors"); *Burdick v. Nevel*, 10th Dist. Franklin No. 98AP-697, 1999 Ohio App. LEXIS 1800, 10 (Apr. 20, 1999). The parties note that no local building code is applicable in this case requiring the maintenance of smoke detectors. *See Marciniak v. Severns*, 6th Dist. Lucas No. L-83-249, 1983 Ohio App. LEXIS 12376, 4 (Dec. 16, 1983) (appellees owed no duty to appellant to install a smoke alarm, since no such duty arose from [Toledo Municipal Code] Section 1327.16 or from R.C. 5321.04(A)(1)); *Steele v. McNatt*, 102 Ohio App.3d 558, 567, 657 N.E.2d 575 (8th Dist.1995).

**{¶26}** Several courts have also rejected negligence claims against landlords in similar circumstances involving smoke detectors, citing issues of proximate cause. *See*

8

*Marciniak* at 4 ("the absence of a smoke detector cannot be said to be connected to the issue of the proximate cause of appellant's injuries"); *McCoy v. IDS Realty*, 10th Dist. Franklin No. 94APE11-1636, 1995 Ohio App. LEXIS 2579, 10 (June 20, 1995) ("[t]here is no way of knowing how much sooner appellants would have known of the fire had the smoke detector gone off").

**{¶27}** The foregoing analysis also supports a holding that Rudd could not recover even if Piltz's status was that of an invitee, licensee, or social guest. Regarding invitee status, Bartlett would be required to warn of hidden dangers of which he knew or should have known. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359, 390 N.E.2d 810 (1979). As noted above, Bartlett did not have notice of the danger nor should he have. Given these facts, he also did not have the "lesser duty" owed to a licensee to refrain from willfully, wantonly, or recklessly injuring him or her. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 13. Finally, as to a social guest, Bartlett would have the duty to warn of "any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous," which does not apply for the reasons discussed throughout this opinion. *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951), paragraph three of the syllabus.

**{¶28}** Given the foregoing, the court correctly granted a directed verdict and dismissed Rudd's Complaint.

**{¶29}** The sole assignment of error is without merit.

{¶30} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, granting a directed verdict in favor of Bartlett and dismissing the Complaint, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.